MISTLETOE EXPRESS SERVICE, an Oklahoma Corporation, Appellant,

v.

UNITED PARCEL SERVICE, INC., a domesticated Ohio corporation; and The Oklahoma Corporation Commission and The Honorable Hamp Baker, Norma Eagleton, and Bill Dawson, Corporation Commissioners, Appellees.

No. 56150.

Supreme Court of Oklahoma.

March 15, 1983.

Rehearing Denied Jan. 10, 1984.

Lana Jeanne Tyree, Oklahoma City, for appellant.

George P. Williams, III, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., James D. Fellers, Jap W. Blankenship, Fellers, Snider, Blankenship, Bailey & Tippins, Oklahoma City, for appellee, United Parcel Service.

LAVENDER, Justice:

The action was brought under Oklahoma's Declaratory Judgments Act, 12 O.S. 1981, §§ 1651 to 1657. At issue is the constitutionality of the Restricted Parcel Carriers Act, 47 O.S.Supp.1980, §§ 166.1 to 166.5. From a judgment of the district court determining the act to be constitutional, appellant Mistletoe Express Service appeals.

■ By stipulation of the parties, the cause was submitted to the trial court for determination based upon the pleadings and the briefs, and without evidentiary hearing. Appellant made timely request for written findings of fact and conclusions of law pursuant to 12 O.S.1981, § 611,[1] and asserts error in that the trial court's findings of fact and conclusions of law are inadequate on material matters properly before the court. The trial court's findings of fact consisted of a paraphrasing of the terms of the act, followed by a general finding and determination that the act is constitutional.

In *Messinger v. Messinger,* Okl., 341 P.2d 601 (604) (1959), this Court said: "The object of the statute (12 O.S.1981 § 611) is to enable the parties to have placed on the record the facts upon which the rights litigated depend, as well as the conclusions of law which the court drew from the facts found, so that exception may be taken to the views of the trial court as to the law

involved in the trial." (Citations omitted.) And in *Davis v. School Dist. No. D–14, etc.,* Okl., 625 P.2d 630 (632) (1981) we further stated: "As was stated in *Reed v. Richards & Conover Hardware Co.,* 188 Okl. 452, 110 P.2d 603 (1941), it is not prejudicial error in every case to deny a request for a separate finding of fact for the court is not bound to make findings of immaterial facts, nor is the court required.to find material facts in greater detail than necessary for a correct decision of questions of law involved in the case in the event the action is reviewed by a higher court." (Citations omitted.) In the case before us, there were no facts to be found beyond those stated in the Restricted Parcels Carrier Act itself, and the conclusion of law that the act is constitutional as against the constitutional infirmities asserted by appellant is sufficient to present the issues to this Court on appeal.

Appellant alleges the Restricted Parcel Carriers Act is in violation of the provisions of Art. 5, § 57[2] because: (1) it extends the provisions of existing laws without re-enacting and publishing those laws; (2) it repeals or amends inconsistent statutes in an obscure manner without re-enactment or publication; and (3) it invalidly amends the Oklahoma Constitution.

■ In its attack on constitutionality, appellant urges that the provisions of §§ 4 and 5 of the Restricted Parcel Carriers Act are in violation of that portion of Art. 5, § 57 of the Oklahoma Constitution which provides: "No law shall be revived, amended, or the provisions thereof extended, or conferred by reference to its title only but so much thereof as is revived, amended,

---

1.  12 O.S. § 611 provides: "Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant, unless one of the parties request it with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing, the conclusions of fact found, separately from the conclusions of law."

2.  Art. 5, § 57 of the Oklahoma Constitution provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length; Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

extended, or conferred shall be re-enacted and published at length."

Sec. 4 of the act in pertinent part provides:

"As to restricted parcel carriers, the provisions of this act shall be controlling, and no laws which conflict or are inconsistent herewith shall have any application to the restricted parcel carriers. To the extent not in conflict or inconsistent with this act, all laws applying or pertaining to motor carriers, including without limitation Section 18 through Section 34, inclusive of Article IX of the constitution of the State of Oklahoma and Sections 161 through 180m, inclusive, of Title 47 and rules and regulations of the Commission promulgated thereunder, shall be applicable to restricted parcel carriers; provided, that the Commission may grant such exemption from or promulgate such different or additional regulations pursuant to this act as the Commission may, in its discretion, deem necessary to accomplish the purposes of this act . . . ."

Sec. 5 provides:

"If this act or any provision hereof is, or may be deemed to be, in conflict or inconsistent with any of the provisions of Section 18 through Section 34, inclusive, of Article IX of the Constitution of the State of Oklahoma, then, to the extent of any such conflicts or inconsistencies, it is hereby expressly declared that this entire act and this section are amendments to and alterations of said sections of the Constitution, as authorized by Section 35 of Article IX of said Constitution."

The Restricted Parcel Carriers Act purports to be both a legislative amendment and/or repeal of some of the provisions of Title 47 of the Oklahoma Statutes, and a constitutional amendment as it relates to the provisions of §§ 18 through 34 of Art. 9 of the Oklahoma Constitution.

As to the latter, we find no merit in appellant's assertion that the enactment contravenes Art. 5 § 57 of the Oklahoma Constitution for two reasons. First, § 57 clearly on its face relates to "every act of the Legislature" and not to constitutional amendments. Secondly, the only limitations imposed upon a constitutional amendment under Art. 9 § 35 are that the constitutional enactment occur after the second Monday in January 1901, and that its operational effect be confined to §§ 18 to 34, inclusive. As this Court said in *In Re Initiative Petition Number 259, etc.,* Okl., 316 P.2d 139 (145) (1957):

"Since the Constitution and statutes make no requirement that a proposed amendment refer to the Constitution or the section to be amended, and since the proposed amendment would, if adopted, amend any section of the Constitution in conflict therewith, we conclude that it is not necessary for the text of the proposed amendment to refer to the Constitution or any section thereof."

The intention to amend the Constitution with reference to §§ 18 through 34 of Art. 9 was clearly manifested in the language of § 5 of the Restricted Parcel Carriers Act, thus meeting the requirement recognized in *Oklahoma Cotton Ginners' Ass'n v. State,* 174 Okl. 243, 51 P.2d 327 (332) (1935) wherein we said:

"It would seem that the Legislature, if it intended to amend the fundamental instrument on which the government of this state was erected, would have expressed itself in no uncertain terms as to the character of its action."

As to the separation of powers clause in Art. 4 § 1 of the Oklahoma Constitution, dividing the state government into three separate departments: The Legislative, Executive, and Judicial, we held in *Russell v. Walker,* 160 Okl. 145, 15 P.2d 114 (1932) that this constitutional provision does not apply to the Corporation Commission in view of Art. 9 §§ 18 to 35 of the Constitution.

■ Nor do we find the Restricted Parcel Carriers Act in its application to Title 47 of the Oklahoma Statutes constitutionally defective in light of the provisions of Art. 5 § 57 of the Constitution. In the leading case of *City of Pond Creek v. Haskell,* 21 Okl. 711, 97 P. 338 (1908) (at p. 354) this

Court quoted with approval from *People v. Mahaney,* 13 Mich. 481, as follows:

"It is next objected that the law is invalid because in conflict with [Art. 5 § 57] of the Constitution which provides that 'no law shall be revised, altered, or amended by reference to its title only; but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length.' The act before us does not assume in terms to revise, alter, or amend any prior act, or section of an act; but by various transfers of duties it has an amendatory effect by implication, and by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. If, whenever a new statute is passed, it is necessary that all prior statutes modified by it by implication, should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors, and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and republish the various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the state, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title. This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public from the difficulty in making the necessary examina-

tion and comparison, failed to become appraised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect, and was perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. *But an act complete in itself is not within the mischief designed to be remedied by this provision and cannot be held to be prohibited by it without violating its plain intent.*" (Emphasis added.)

The Restricted Parcel Carriers Act is complete within itself and removed from the mischief Art. 5 § 57 was designed to avoid. The case of *Casner v. Meriwether,* 152 Okl. 246, 4 P.2d 19 (1931) relied upon by appellant was cast in doubt or at least distinguished in *Service Feed Co. v. City of Ardmore,* 171 Okl. 155, 42 P.2d 853 (1935) at p. 859, and ennunciates no applicable precedent here.

■ Appellant alleges that the Restricted Parcel Carriers Act is constitutionally deficient under Art. 5 § 57 of the Oklahoma Constitution as that act relates to Title 47 of the Oklahoma Statutes in that the body of the act purports to amend or repeal existing statutory provisions related to motor carriers to the extent that the new act is inconsistent with other provisions of Title 47, although such intent is not specifically expressed in the title to the act. As we have previously observed, the act in question is complete in itself and does not purport to be directed in an amendatory or repealing sense against isolated or fragmented provisions of existing law. Thus any amendment or repeal of any portion of Title 47 is solely by implication. In 5 A.L. R.2d, at p. 1288, it is stated.

"Generally, a new, original, or independent act, complete in itself, which does not purport to be amendatory, although it may amend or repeal existing acts, or

parts thereof, by implication, has been held not to come within the constitutional requirement here in question."

Many Oklahoma cases in support are annotated at p. 1291. The effect of the act, complete in itself, may or may not be to amend or repeal any earlier provisions of Title 47 by implication, but failure to give notice of such effect in the title is not necessary to its constitutional validity in jurisdictions where amendment or repeal by implication is recognized. 73 Am.Jur.2d Statutes § 135. Oklahoma is one of the states which recognizes the doctrine of amendment or repeal by implication. *Ratliff v. Cornelius, County Clerk,* 49 Okl. 91, 151 P. 675 (1915); *Parker v. Blackwell Zinc Company,* Okl., 325 P.2d 958 (1958); 5 A.L. R.2d 1291.

▆ The remaining attacks by appellant as to the act's constitutionality under Art. 5 § 57 as the act applies to Title 47 of the Oklahoma Statutes are answered in the case of *Jones v. State,* Okl.Cr., 542 P.2d 1316 (1332) (1975) as follows:

"In numerous cases the courts of this state have held that the purpose of this constitutional provision is to prevent the blending of repugnant objects in one act and the inclusion of provisions not indicated by the title in order that those interested may not be misled or misinformed as to the contents of the statute. (Citations omitted.) Additionally, it has been repeatedly held that this section is not to be construed in such a manner as to hamper or unreasonably restrict the Legislature in the performance of its duty. (Citations omitted.) It has repeatedly been held that this section is general and comprehensive in nature and where the body of the act is germane, relative and cognate ·to the title of the act, it is sufficient to meet the requirements of the constitution. (Citations omitted.) Also, if the clauses of the statute are referable and cognate to the sub-

ject expressed in the title, the title need not set out each clause of the act. (Citations omitted.) Neither need the title of a statute embrace an abstract of its contents when the title otherwise fairly indicates the general purpose of the statute. (Citations omitted.)"

Here the subject matter of the act as expressed in the title thereof is the creation of a class of carriers known as restricted parcel carriers. It is sufficient to meet the requirements of Art. 5 § 57 of the Constitution that the body of the enactment is referable and cognate to the subject expressed in the title, and that the act embrace but one subject. In *Bond v. Phelps,* Okl., 200 Okl. 70, 191 P.2d 938 (1948), this Court quoted with approval 50 Am.Jur., Statutes § 197 as follows:

"The constitutional prohibition of more than one subject in an act does not impose any limitation on the comprehensiveness of the subject, which may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several. To constitute plurality of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. Within the meaning of the constitutional provision, matters which apparently constitute distinct and separate subjects are not so where they are not incongruous and diverse to each other. Generally speaking, the courts are agreed that a statute may include every matter germane, referable, auxiliary, incidental, or subsidiary to, and not inconsistent with, or foreign to the general subject or object of the act....."

▆ Appellant next asserts that the various provisions of the Restricted Parcel Carriers Act by its terms legislatively establishes certain unrebuttable presumptions[3]

---

3. The precise language complained of in the Restricted Parcel Carriers Act is as follows: "... It shall be unlawful for any person to operate or furnish service between points within this state as a restricted parcel carrier without having obtained from the Commission a certificate declaring that public convenience and necessity require such operation

which are at variance with previous provisions set forth in Title 47 of the Oklahoma Statutes, which appellant claims to be in violation of the due process clause set forth in Art. 2 § 7 of the Oklahoma Constitution, and of the Fourteenth Amendment to the United States Constitution.

Appellant argues that while the Restricted Parcel Carriers Act purports to require such carrier to obtain from the Corporation Commission a certificate of public convenience and necessity to operate between points within the state, the act further provides that in the case of restricted parcel carriers within a described area it shall not be deemed an operation over the routes or between the points within the same area which are authorized to be served by other carriers who do not come within the class of restricted parcel carriers operating under existing certificates. The act further provides that a restricted parcel carrier having obtained a certificate is authorized and directed to provide service throughout the state on an irregular route basis. Thus, appellant urges, the act creates irrebuttable presumptions of facts which are not necessarily universally true which absent an overriding governmental purpose to be achieved violate constitutional guarantees of due process and equal protection of the laws. Legislatively mandated irrebuttable presumptions, once established, fall into the category of procedural law as distinguished from substantive law because they presuppose a universal fact or truth and preclude the opportunity to present evidence to the contrary. In *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *United States Department of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); *Cleveland Board of Education v. La Fleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d

52 (1974), and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), it is held to be a denial of due process to legislatively mandate an irrebuttable presumption of a fact, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination.[4]

■ However, as we view the challenged language of the Restricted Parcel Carriers Act, no irrebuttable presumptions are legislatively mandated therein. The challenged act has established a separate class of carriers (restricted parcel carriers) and has established *substantive* law applicable to all members of that class. While the challenged language suggests the possibility of conclusive presumptions, when placed in the perspective of what the Legislature intended by the language used, it becomes apparent that those within the newly created class of restricted parcel carriers are thereby entitled to operate over the routes or between the points within the same areas as are authorized to be served by non-restricted parcel carriers. When viewed in this light, the challenged language falls into the category of *substantive,* not *procedural* law. Thus, the problem becomes one of whether such a class could be validly created and whether the law as applied to the members of the class is unreasonable, arbitrary, and whether there is a reasonable relationship between the objective of the act and the means of its accomplishment.

The distinction between procedural irrebuttable presumptions on the one hand, and substantive law applied to all members of a legislatively created class on the other, was dealt with briefly in *Mourning v. Family Publications Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). The issue

... provided, that in all such cases the proposed operation within a described area by an applicant for a certificate as a restricted parcel carrier *shall not be deemed an operation over the routes or between the points within the same area which are authorized to be served by intrastate motor carriers operating under existing certificates* other than as restricted parcel carriers ...."

The Act requires that the certificate of a motor carrier thereunder receive nothing less than full, statewide irregular route authority: "Service *shall* be provided on a full territorial and irregular route basis ...."

4. Other cases dealing with irrebuttable presumptions when attacked on constitutional grounds are found in 162 A.L.R. (516), 86 A.L.R. (182), 51 A.L.R. (1149).

there was whether a regulation postulated under the Truth in Lending Act that installment contracts calling for credit payments made in more than four installments include a finance charge and thereby bring such contracts within the restrictive orbit of the act. There, as here, it was argued that the act created an irrebuttable presumption of fact. In rejecting the argument, the United States Supreme Court (411 U.S. pp. 376–377, 93 S.Ct. p. 1664, 36 L.Ed.2d p. 334) said:

"Finally, the Four Installment Rule does not conflict with the Fifth amendment under our holdings in *Schlesinger v. Wisconsin* [270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557] (citation omitted) and *Heiner v. Donnan* [285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772] (Citation omitted). In *Schlesinger* and *Heiner,* we held that certain taxing provisions violated the Due Process Causes of the Fifth and Fourteenth Amendments because they conclusively presumed the existence of determinative facts. The challenged rule contains no comparable presumption. The rule was intended as a prophylactic measure; it does not presume that all creditors who are within its ambit assess financial charges, but, rather, imposes a disclosure requirement on all members of a defined class in order to discourage evasion by a substantial portion of that class."

In the case of *New Port Richey v. Fidelity & D. Co.,* (C.A. 5th (1939) 105 F.2d 348), the Court had before it the constitutionality of a Florida statute which provided that where an instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. There the Court said (123 A.L.R. 1356):

"The appellant contends that section 6776 so construed takes its property without due process of law contrary to the Fourteenth Amendment . . . and invades the province of the judiciary in that an irrational conclusive presumption is creat-

ed without a logical basis. (Citations omitted.) We recognize that the legislature cannot make certain facts conclusive proof of another ultimate fact where there is no logical connection or probability in experience to connect them. But the real legislative intent may not be to make a rule of evidence, but a rule of substantive law, and if the legislature may constitutionally do the latter, the form of words used will not defeat the intent. Statutes often say that certain acts 'shall be deemed,' or 'shall be held to be,' or 'shall be conclusively presumed to be' something else which is enjoined or forbidden, when the real purpose and effect is to enjoin or forbid those acts, and not to stultify the courts into really 'deeming' or 'presuming' one thing to be another. We regard the language of section 6776 to be of this sort. Its meaning as a whole is that ordinarily a physical delivery of a negotiable instrument is required to put it in force, and that when it is found complete on its face in the hands of one not its maker it is to be regarded as delivered unless the contrary is shown, but that in the hands of a holder in due course no enquiry is to be made into delivery, but the right of the holder is to be held indefeasible by a want of delivery . . . . It is not capricious or arbitrary, but a reasonable fixing of the rights of the parties . . . ." [5]

In the case at bar, the challenged language of the Restricted Parcel Carriers Act was the enactment of substantive, not procedural law.

■ We next turn to the issue of whether the act establishes a rational classification of restricted parcel carriers reasonably related to the public interest and not in violation of the equal protection clause of the United States Constitution or the Constitution of the State of Oklahoma.

In *Oklahoma Gas & Elec. Co. v. Oklahoma Elec. Coop., Inc.,* Okl., 517 P.2d 1127 (1973) each of two franchised utilities were

---

**5.** In accord, *Re Buchanan,* 184 App.Div. 237, 171 N.Y.S. 708 (1918); *Street v. Farmers' Ele-* *vator Co.,* 34 S.D. 523, 149 N.W. 429 (1914).

contesting the other's right to serve a common territory. There, as here, the argument was made that a state statute insofar as it might affect competition between them resulted in violation of due process and equal protection clause of the Fourteenth Amendment of the United States Constitution. We held that the encroachment by one pursuant to statute upon the territory of the other franchisee was proper if the statute was based upon reasonable and natural distinctions of the encroaching franchisee's classification from those of the other, citing 82 C.J.S. Statutes § 158. We added (p. 1132):

"Or to use plaintiff's briefed quote from *Frost v. Corporation Commission of State of Oklahoma* (1929), 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483, '. . . the classification, in order to be valid, "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' See also *Sanchez v. Melvin* (1966), Okl., 418 P.2d 639; *Tucker v. Mullendore* (1937), 180 Okl. 180, 69 P.2d 35, 357. The [statutes], of course, operated throughout the state. Also, it was necessary that they operate uniformly upon all who came within their scope (*Sanchez v. Melvin,* supra), and it is not claimed that they did not."

In *Oklahoma State Election Bd. v. Coats,* Okl., 610 P.2d 776 (780) (1980), we said:

"There are two standard tests used to review legislative classification in cases involving the equal protection clause. The first is the basic and conventional standard for reviewing discrimination or differentiation of treatment between classes of individuals. It manifests restraint by the judiciary in relation to the discretionary act of the legislature, and invests legislation involving differentiated treatment with a presumption of constitutionality. This standard requires merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate stated purpose. Under this rationale, if a classification does not permit one to exercise the privilege while refusing it to another of like qualifications, under similar conditions and circumstances, it is unobjectionable. The classification must be neither arbitrary nor capricious, and it must bear a rational relationship to the objective sought to be accomplished. A classification is constitutional if there is a reasonable classification and reasonable opportunity for uniform or equal incidence on the class created.

"A more stringent test is applied, however, in cases involving suspect classifications which touch on fundamental interests. In these instances, the United States Supreme Court has adopted an attitude of active and critical analysis which subjects the classification to strict scrutiny. Under the strict standard applied in such cases, the state bears a burden of establishing, not only that it has a compelling interest which justifies the law, but that the distinctions drawn by the law are necessary to further its purpose."

Upon applying the foregoing principles to the Restricted Parcel Carriers Act, we find no fundamental interest present which calls for application of the second, more restrictive standard.

■ We further find that the distinction drawn in creating and regulating a separate class of carriers known as Restricted Parcel Carriers is neither arbitrary nor capricious, that it bears a rational relationship to the objective sought to be accomplished, and that the legislative differentiation made in the act applies equally to all who fall within the legislatively created class. Appellant has failed to meet its burden of showing that the act is essentially arbitrary and clearly unreasonable, and that, together with the presumption of the act's constitutionality, compels us to find that the challenged act does not violate constitutional equal protection or due process.

■ Appellant next contends that the Restricted Parcel Carriers Act is a special law and therefore violative of Art. 5, §§ 46, 51, 59, and 32 of the Oklahoma Constitu-

tion. What we have heretofore said largely disposes of the arguments of appellant. We need only add that a statute which applies to all persons or things of a designated class uniformly throughout the state is a general law within the meaning of the Oklahoma Constitution. *Sanchez v. Melvin,* Okl., 418 P.2d 639 (1966); *Grable v. Childers,* 176 Okl. 360, 56 P.2d 357 (1936); *Burks v. Walker,* 25 Okl. 353, 109 P. 544 (1909).

Appellant next asserts that with reference to the application for a certificate filed by United Parcel Service and pending before the Oklahoma Corporation Commission that the Commission cannot proceed to hear the application without first enacting valid rules and procedures or acting contrary to existing rules and regulations of the Commission. On January 7, 1981, this Court denied the application made to this Court to stay said proceedings before the Commission. The issue thus raised is not one of constitutional infirmity.

The Commission has not yet reached a determination on the application for a certificate, nor have any final rulings been made by the Commission with reference to the necessity for or the application of its rules or regulations been brought before us on appeal therefrom.

These matters cannot be reached by an action for a declaratory judgment because the necessary element of an "actual controversy" as required by 12 O.S.1981, § 1651 does not exist. In *Gordon v. Followell,* Okl., 391 P.2d 242 (1964), this Court quoted with approval from *Kahin v. Lewis,* 42 Wash.2d 897, 259 P.2d 420 as follows:

"This court has many times held that in order to invoke the jurisdiction of the court under the declaratory judgment act there must be an actual existing justiciable controversy between parties having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, potential or contingent dispute. * * *."

The posture of the proceedings now before the Commission would leave this Court to speculate as to what rulings might possibly be made by the Commission pertaining to its rules and regulations, or the need therefore, or as to any possible prejudice to the appellant which might result therefrom. Under such circumstances, declaratory judgment jurisdiction may not be invoked.

Jurisdiction under the Declaratory Judgments Act with reference to rules and regulations of the Oklahoma Corporation Commission is denied and the judgment of the trial court otherwise affirmed.

BARNES, C.J., and DOOLIN, HARGRAVE and WILSON, JJ., concur.

HODGES, J., concurs in result.

SIMMS, V.C.J., and IRWIN and OPALA, JJ., dissent.